161524 Preston v. Nagel Federal courts have declaratory judgment jurisdiction for cases just like this one, in which a new technology company faces a potentially crippling accusation Well, that may be, but what about appealability? We can start there, Your Honor, certainly. We sort of have to, don't we? Well, there are two jurisdictional issues. I think you could start with either one, but let's go to the appellate jurisdiction issue first. There, our basic position is that in Section 1454, and in the America Invents Act, Congress created a new removal and remand provision, specifically for patent cases. If you look at 1454, it both has a provision which deals with the removal of patent claims, and in Subsection D, it has a provision which deals with the remand of patent claims. And Subsection D does not allow the remand of patent claims that are removed under 1454. It's clear when you look at the structure of 1454D, unlike 1447, it does not say if there's not subject matter jurisdiction remand. Instead, 1454D says that if a claim neither is a basis for removal under 1454A, nor falls within the court's subject matter jurisdiction, then you remand. That's very different than 1447. So, Kircher has this language about exclusive federal jurisdiction, which is sort of confusing. Are you contending that any time there's a failure by the district court to recognize that something is within the exclusive federal jurisdiction, that it makes a mistake in that regard, that that creates appealability? I'm not sure we would go that far, Your Honor, nor do I believe we need to. We think that actually this case was probably more like Osborne, where Congress creates a one-way shuttle to federal court, and the Supreme Court in Osborne said that… You mean it's the enactment of the special removal provision as part of the AIA? It's both the special removal provision as well as the special remand provision in 1454D, which makes clear Congress intended for patent claims perhaps to be dismissed by a federal district court, but not to be remanded by a federal district court to a state court, which lacks jurisdiction over patent claims under the AIA. Well, he didn't remand the federal claim to the state court here. He dismissed it, right? No, he remanded it, Your Honor. If he had dismissed the claim, there would be no question that this court would have… Right, right. But if the dismissal and the remand are part of the same order, then you have a problem. I thought he dismissed the federal claim. No, there was no motion to dismiss, Your Honor. This was purely a motion to remand. What should have happened here is that the district court should have looked at the motion to remand, observed under 1454A as the district court found there was a proper basis for removal because there were patent counterclaims, and on the basis of that concluded that there was not grounds for remand under 1454A. He might then have dismissed the counterclaims, which we could then appeal to this court and remanded the rest, but that's not what he did. He remanded the entire case back down to the state court. We think that's not what Congress intended in 1454D when it created the neither-nor test, which is a pretty radical departure from 1447C. Congress wanted these remand decisions to be appealed, but why wouldn't it have said so, as it has in other statutes? Well, that's not what happened in Osborne. So in Osborne, there was no provision which said a wrongful remand can be appealed to the court. The Supreme Court nonetheless found that implicitly. But there are other statutes that do say you can appeal a remand of her. There certainly are, Your Honor, but that's not necessary. And my brother… But aren't the – I mean, the problem with your reliance on Osborne is those claims there, if they got remanded, could never be heard in federal court. I mean, and the statute gave the attorney general the authority to demand that they be heard in federal court. Here, there's nothing that would prevent you from separately filing a declaratory judgment action in federal court. So there's nothing that prevents you from having these – your counterclaim heard in federal court, which seems to be really an important and distinguishing factor. It's certainly a difference, Your Honor, but I'm not sure it distinguishes this case from Osborne because Congress clearly in the AIA intended to depart from what had been the prior practice under which we could have brought a separate action in federal court in allowing – My guess here, argument, is that what Congress did contemplate was that the federal claims and the related state claims would be tried together in federal court. Would be tried together in federal court. That was a departure from the pre- And that that right is lost if there's no appeal. I mean, you can't very well reverse a state court judgment on the state claims on the ground if they should have been tried together with the federal claims in federal court. That's exactly correct. And in this case – My question is whether that's enough. Well, we would posit it is enough. Where do we get that message? I think you get the message from the combination of 1454A, allowing a case to be removed from state court on the basis of counterclaims, which is somewhat unique in the law. Usually you have to look at the well-plea complaint. You get that from 1454D, which says you only remand if there is neither a basis for removal under 1454A, which there clearly was here, nor subject matter jurisdiction. You need to have both of those criteria satisfied to remand, which the district court, again, found that there was a proper basis for – I mean, that's still – all that gets you is the notion that Congress wanted them heard together, but it doesn't get us the further step of overriding 1447D, which I think has been pretty clearly applied to bar appellate review or remand orders. And, Your Honor, I think there are two further points there. One is that under ThermTron, 1447D only applies if there's a remand under 1447C, and here where there's a patent case, and you have a sui generis removal and remand provision for patent cases under 1454. This is not a 1447C case in the first place. But second, and more important, and just as importantly, in Osborne, the Supreme Court interpreted from the one-way shuttle set up by the West Hall Act that Congress intended there to be appellate review of decisions remanding to state court claims that Congress intended to be heard only in federal court. Here, again, we would view the combination of 1454A and D as setting up such a one-way shuttle that what should have happened is that the claim should have been dismissed, although we don't think it should have been dismissed either, just to be clear about that. And then if it were dismissed, this court could have review of it. But when you take that and the stripping of jurisdiction over patent claims from state courts, it's clear Congress did not want these to go back to state court. Just as in the West Hall Act, Congress did not want these claims, additional in that case, to be heard in state court rather than federal court. I still don't understand that, because you can see that you could have separately filed a declaratory judgment action here. So Congress couldn't have intended for the state claims and the declaratory judgment claims to be heard together all the time. Well, that is certainly our option. It seems like you're putting yourself in the position of the attorney general in the other case and saying, as long as the defendant can come up with some counterclaims, patent counterclaims to these state law claims, you can always demand that it be heard in federal court. And that there's no possibility of a remand. And that is the right that Congress clearly gave us in 1454, Your Honor, that if you have a counterclaim that you can raise to the state court claims, you have the right to remove that to federal court. And 1454d makes clear that if there is a patent claim, that patent claim cannot be remanded to state court. But you don't have a right to have the state claims heard in federal court, which is what is happening in the other case. We do not have that right under 1454d. The district court has the option. I mean, the point of that Westfall Act case is those cases can never go back to the state court once the attorney general has made the certification. Here, even if we agree with you that we can review the remand order, if we agree with the district court that there was no Article III controversy here, the district court can still remand the cases back to the state court, can't he? He would need to dismiss the patent claim first. And it would have to go back down to the district court to hear a motion to dismiss. At this point, we've actually, as the appellees know, amended our counterclaim. We provided substantially more detail. And so there could be a motion to dismiss hearing. If the motion to dismiss winds up in dismissal, we may wind ourselves back up here. But there'd be no question of jurisdiction. And I completely understand. We're not suggesting that this case is on all fours of Osborne. There are differences between the AIA and the Westfall Act. However, we think that those differences should not lead to a different outcome here. Because in both cases, it was clear that Congress wanted to give the defendant the ability to get the case to federal court and to drag along the state court claims. Again, the district court may have discretion under 1454 to remand the claims over which it has merely supplemental jurisdiction. That does not detract from our right to bring those claims to the district court in the first place, and to at least have the opportunity to have the entire case heard in one form, and to have the advantages of a single, consolidated, more efficient proceeding that Congress intended to give defendants in patent cases by giving us the right to remove based on counterclaims rather than the well-pleaded complaint. Was there any discussion in the legislative history of the Holmes fix that there was an issue of appealability? I don't recall any discussion of appealability. We do cite the one statement by Senator Kyle in which he said that the intent was for these claims to remain in federal court. We quote it in our brief. I'm not going to pretend to remember it word for word, but the gist of it was that if the cases get to federal court, they should stay in federal court and not be sent back down to state court if there are patent claims. Are there any examples outside the patent area where it is clear, or courts have held, that a remand under some provision other than—I'm not sure how to put this— where one would say that certain jurisdictional remands are not covered by 1447C and hence not subject to 1447D? You said early in your argument, you made a point which I think maybe I wasn't focusing on so much, that it's reasonably clear that 1447D applies only to remands for lack of subject matter jurisdiction where the remand is covered by 1447C. And you made a kind of suggestion that maybe 1454 in its remand provision occupies the field and removes 1447C from the picture of remands here and therefore to 1447D on appeals wouldn't apply. Is there any counterpart for that line of thinking elsewhere? We looked pretty hard. I'm not sure we found any. And if I can explain the 1454 point. So 1454 sets up a two-part test for remand, one part of which is lack of subject matter jurisdiction. We believe that that would be, in effect, the two-part test under 1454 would be surplusage if under 1447C you had to remand based upon the showing of only one part of that test, which is the lack of subject matter jurisdiction. Whereas under 1454D you have to have both the lack of subject matter jurisdiction plus the claim could not have been a basis for removal under 1454A. In other words, it's not a patent claim. And you're not making the argument that the absence of a case or controversy is not a subject matter jurisdiction ground? We're not, Your Honor. I'm down to two minutes. If I could turn to the issue of case or controversy. We have two basic points. The first is that if you look at the complaint and you fairly read all of the accusations, it is clear that what plaintiffs were talking about here was an infringement of patent rights, not trade secret rights. There's not even a reference to trade secret rights with respect to ELC Electromagnetics Court until you get to count seven of the counts in the complaint, paragraph 123. Up to that point, it's all about ELC's patents. And in fact, if you look at paragraph 69 of the complaint, which tellingly is, we focus on it in our opening brief, it's never addressed in the opposition brief. Paragraph 69 states that defendants are, quote, using electromagnetic chemistry to modify elements and to manufacture platinum. And they describe that as the core of the most important ELC intellectual property. If you look at the ELC patents, and we provide some examples in the briefing, I would suggest claims one and five of both the 593 and 373 patents, which can be found at A354 and A439 in the appendix. You'll see what these claims are for is basically what we're accused of doing in paragraph 69 of the complaint, using electromagnetic, inducing a change in metallic elements through the use of electrochemistry. If there had been a letter which came to us which included all of the allegations between paragraph 60 and 72 of the complaint, it said that you are using our most important intellectual property without a license and without permission. If it had paraphrased language from the patents to say what we're accused of doing. Okay, you're out of time. We'll give you two minutes for a moment. Thank you, Your Honor. Mr. Kakega, is that how you pronounce it? Kakez. Kakez, okay. Good morning, and may it please the court. Before addressing the threshold jurisdictional issue, I think it might be helpful just to spend, just very quickly, remind the court what this case is really about and how we got here. I think we know. Okay, so I'll move to the jurisdictional issue then. So, our basic point is that 28 U.S.C. section 1447D is crystal clear. That a remand for lack of subject matter jurisdiction is not appealable. Why doesn't 1454 replace that altogether? So, 1454 does include a specific section on removal, 1454A, and it addresses remand, but it first, 1454D only addresses, requires remand of certain types of claims and permits remand of other categories of claims, but it does not expressly prohibit remand of patent claims that were first filed in state court when a district court finds a lack of subject matter jurisdiction. So, that's unlike the Osborne case where there really was an express statutory requirement. That wasn't really my question. I think my question was more to follow up on your friend's kind of point towards the end of his argument that 1447 doesn't apply at all anymore to patent law counterclaims, that we only look to 1454 as a basis for remands. Yeah, I don't think, I mean, I certainly haven't seen... The answer is that Kircher said that 1457D applies outside of the context of 1447C, right? Correct, correct. Kircher says that it applies to general removal and specific removal statutes that are enacted later. This, of course, is an example of one of them, and so that it's clearly undisputed, it's not disputed that the remand was for lack of subject matter jurisdiction and therefore there should be no appeal. As far as the dismissal point that Mr. Martin raised, I do need to point out that there was no argument in the district court that the correct disposition on our motion to remand was dismissal. That's been articulated most clearly for the first time today, but the defendants did not tell the district court, argued to the district court that it could not remand the entire case and that it had to dismiss the patent claims. And I think it's appropriate to remand the entire case because that's where it began procedurally. The case began in state court, the counterclaims were filed in state court, then the case was removed. If the district court finds on our motion to remand that there is no subject matter jurisdiction, which it did, then the appropriate course is to remand the case to the state court. Now, it's true that the state court will... So you didn't ask the patent law counterclaim to be dismissed, you wanted it remanded along with the state court. Remanded to where it was filed, to where it began, and it's true that it then will be dismissed because state courts have no jurisdiction, but that's the procedural path on which those counterclaims travel. Do you agree that part of the Holmes fix was designed, at least in the compulsory counterclaim situation, to litigate the federal claims and the state claims in the same federal form? In certain appropriate circumstances, yes, but I think 1454D itself contemplates parallel state and federal court actions. It requires a compulsory counterclaim. Congress certainly contemplated that where there was a compulsory counterclaim would all be litigated in one place, in federal court, and that if the remand occurs improperly and there's no appeal, that right is forever lost, right? If a counterclaim is indeed compulsory. So in that respect, the lack of an appeal provision does frustrate one congressional purpose, right? Only if we're dealing with compulsory counterclaims, which I don't believe these are. So if they were compulsory counterclaims, would that mean there was a right of appeal? I don't think that would mean that there's a right of appeal because, again, the 1367C would permit remand of claims even within the district court's supplemental jurisdiction, and I think one case that's helpful on this point is— Well, I don't think the district court could remand a compulsory counterclaim, something that fell within that category. So I think one case that's helpful on this point and the argument that the AIA was designed to have state claims and federal claims tried together in one federal forum is this court's decision in Angio score versus Trireme, which was decided just a couple of months ago after the briefing in this case. And that case was decided actually under 1367, but it involved actually a patent infringement claim by the plaintiff along with state law claims similar to the ones brought here, breach of fiduciary duty and the like. And both claims were tried, the patent infringement claims and the state law claims were tried, and even after trial, this court held that 1367, that the district court lacked supplemental jurisdiction over the state law claims, which related to theft of a corporate opportunity concerning essentially the same device that was at issue in the patent counterclaims. So I don't think that 1454 or anything in the AIA means that these types of claims need to be tried together or means that an appeal is available because there are compulsory counterclaims. If Nagel and Company filed a declaratory judgment action in federal court, new one, after the Massachusetts Superior Court dismisses the counterclaim there for lack of, I guess, their jurisdiction would be preempted, putting aside the case or controversy issue, can that case proceed in district court? Well, I think a couple of things. I think it should not proceed for two reasons. I think first, we already have a ruling from the district court that there is no case or controversy, and I would submit that. That's what I was putting aside. Okay, so putting that aside, I still believe there are issues of ownership in the state court case. We have a claim for constructive trust, and if the plaintiffs prevail on the constructive trust claim, effectively they own everything that Nagel and Company have done, and so there cannot be infringement. And so that action, that federal action, if it were justiciable, if they were able to allege enough facts to make it justiciable, should be stayed pending the outcome of the state case, which we would submit will dispose of the dispute. But that sounds like a defense on the merits, not any kind of procedural objection to them refiling the declaratory judgment. Yeah. I mean, I don't know if there may be estoppel issues. How can there be estoppel? If there's no appealability, then if there's no appeal right, then collateral estoppel probably does not preclude the refiling. I mean, if the district court found it lacks jurisdiction and the state court lacks jurisdiction, how could there be estoppel? There's been no merits determination whatsoever. Correct. But I think if the same case were refiled, there still would be no declaratory judgment jurisdiction in federal court. Sure, you could re-argue that, and then they could appeal that. If they lose that again, they could appeal that to us. Yes. Yes, they could. And I think that's the only difference between a case like this and one that's first filed in federal court is that the declaratory judgment plaintiff or your counterclaimant risks the loss of their appeal right if they do what the defendants did here to preserve that. And that's the only thing that they lose by doing that, to preserve that appeal right in the case of a remand for lack of subject matter jurisdiction, which is pretty narrow. They would have to file an affirmative declaratory judgment action. But if they did file an affirmative declaratory judgment action, then what we have, if I understand what you're saying correctly, is sort of a race to judgment in which the federal court, as part of the action, would have to determine ownership of the patents. And you're saying the state court is also going to be determining ownership of the patents. And so there's a real mess that's created by bifurcating these cases and putting the federal claim in federal court and the state claim in state court. Well, respectfully, Your Honor, I don't think so. Because I think the federal claims, which would be filed later and far behind where the state law claims are and would be, should be stayed, depending on the outcome of that. And then we can deal with the federal claims if that day. But that sounds, again, like an example where the congressional purpose of having the federal claims tried in federal court is going to be undermined by having the ownership question determined in state court. Well, I think, respectfully, again, I think 1454D itself contemplates having these parallel actions. I mean, you may have a similar issue that ends up getting remanded under 1447D2 because there's lack of supplemental jurisdiction that might have some impact on the federal case. And again, I point to the ANGO score decision as an example of a case where you do have patent issues and some arguably related, generally related state law claims. And those, even after trial, this court ordered that the state claims should have proceeded in state court, not federal court. I know we may not be able to get to the question, but on the case of controversy requirement, you said, I think, a couple of times in your brief you focused on how the new group, the new NAGLE group, doesn't have products yet or anything. And it seemed to me that what you were saying there was not addressing the question of practicing the methods in the course of doing research. There's no general research exception to 271 infringement. Why is, and do I remember right, you allege that they basically hired all your researchers? The researchers from the- They hired former, right, former engineers. Why would their conducting of research to manipulate these atoms to create, or molecules to create the materials they want, not itself be a here and now form of alleged infringement? So I think the point we were trying to make by pointing out that actually neither company has commercialized the product, and both are research and development companies, is that there's no allegation or evidence of meaningful preparation for potential infringement or significant concrete steps of activity that would infringe the claims in the 11 patents that are alleged. A bunch of these patents have method claims in them. Correct, correct. Is there some reason to doubt, or what should we think about the idea that their research, you say it's in the same field, would not be at least arguably practicing the method claims of some of these patents? Well, I think one of the critical aspects under the metamutant standard in terms of immediacy and actually reality is that the technology here, IDL's technology, be substantially fixed and not fluid and indeterminate. And if you look at the allegations in the complaint, there's really nothing added in the counterclaims. I would submit that there's nothing to determine that anything is substantially fixed. But you're accusing them of planning to do this. What we're accusing them of, and I think this really is at a higher level, is what distinguishes this case from the others. You're accusing them of planning to infringe, right? Not planning to infringe. What we're accusing them of is planning to avoid infringement by failing to pay patent maintenance fees, waiting until the patents lapse, and then possibly using the formerly patented technologies at IDL. Or to put it another way, planning to engage in an activity that if your state law arguments are correct would be infringing. Planning to engage in an activity that would no longer be infringement because we're alleging that they would do it after the patents lapse. After they would improperly allow the patents to lapse. That's why I said planning to engage in activity that under your state law claims would in fact be infringing because their attempt to let the patents lapse would be defeated by those state law claims. Well, I think temporally it would only occur after the lapse, at which point it would no longer be. But if you're right about the state law claims and these patents are going to last for a while, right? So that you've corrected the lapsing problem and the patents are then you don't think that they're going to engage in those activities. Right, correct. They're just going to shut down. Well, not necessarily shut down. Or go into another line of work. Or utilize the trade secrets. And that was the thrust of the first month of litigation here with the trade secrets on the encrypted hard drive. And so they may use technology, trade secret, confidential proprietary information taken from CET that belongs to CET and ELC at IDL, but that would not be patent infringement. And I see that I'm out of time. Okay, thank you. Thank you, Your Honor. Just a few points. First, in Osborne there was no express prohibition on the remand of claims in the statute there. There was an express requirement that certain claims be remanded to state court. And you can find this in the Supreme Court decision, where they quote the language obviously at length. But there was nothing saying that certain claims had to stay in state court and that there could be an appeal. Sorry, had to stay in federal court and there could be an appeal if they were improperly remanded. That was the gist of Justice Scalia's dissent, that nothing in the statute expressly required the result in Osborne. We have exactly the same situation here with the AIA in Section 1454, where it's clear from the structure and the purpose of 1454 A and D that Congress intended certain claims to get to federal court and to stay here. And so we're asking for the same logic to be applied in this case as it was applied there. With respect to Kircher, even if 1447 generally applies to remands, 1454 D, for the reasons we've discussed, has a structure that would be rendered surplusage if you read 1447 D to have that breadth of application here. Because 1454 requires a two-part test to be satisfied before there's a remand, whereas 1447 C only has a single-part test, which would subsume 1454's test. With respect to a race to judgment, it could be a big problem here. For the reasons we've pointed out in our briefing, if you look throughout their complaint, including the substantive counts in that complaint, there is a theme that we are not only attempting to practice their patents at some indefinite future period when they lapse, but that we're doing so today. And if you look at Paragraph 69 again, which they've still never addressed, if you look at the paragraphs which surround Paragraph 69, it's clear that they're saying that right now we are practicing their patents. They say that we're currently practicing their most valuable intellectual property. They say in two separate paragraphs that they would be worthless without their patents. So it's pretty clear they say that we're practicing their patents. Okay, Mr. Martin, I think we're out of time. Thank you. Thank both counsels. The case is submitted. Thank you, Your Honor.